**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  07-cv-00350-REB-CBS

JDB MEDICAL, INC., a California corporation;
and JAMES D. BEETON, an individual,

Plaintiffs,

v.

THE SORIN GROUP, S.p.A., an Italian entity of
unknown form; and ELA MEDICAL, INC., a Delaware
corporation,

Defendants.

___

Civil Action No.   07-CV-00591-REB-CBS


FLINT MEDICAL, INC., a California corporation;
and KEITH FLINT, an individual,

Plaintiffs,

v.

ELA MEDICAL, INC., a Delaware corporation,
THE SORIN GROUP, S.p.A., an Italian entity of unknown form
DOES 1 THROUGH 10, inclusive,

Defendants.

_____

**ADDENDUM TO SCHEDULING ORDER REGARDING ELECTRONICALLY
STORED INFORMATION**
_____

1

The parties, by and through their undersigned counsel, respectfully submit this Addendum to the Scheduling Order to address issues regarding electronically stored information ("ESI").

## I. PROCEDURAL STATUS

1. On May 21, 2007, counsel for all parties attended a scheduling conference to discuss their proposed Scheduling Order.

2. At the scheduling conference, this Court raised issues regarding ESI.

3. To ensure that the parties adequately consider and address ESI issues and that such issues do not slow the progress of this case, the Court ordered the parties to review the District of Maryland's suggested protocol for discovery of electronically stored information and to confer with one another to address and resolve any ESI issues.

4. Subsequent to the May 21, 2007 scheduling conference, counsel for all parties reviewed the Maryland protocol and prepared for a telephone conference.

5. On May 25, 2007, counsel for the parties held their first telephone conference to discuss ESI issues raised by the Maryland protocol. In addition to counsel, two ESI consultants/experts participated in the telephone conference. ELA Medical, Inc. ("ELA") and Sorin, S.p.A ("Sorin") worked with David Yerich, an in-house Faegre & Benson E-discovery consultant, to address ESI issues. JDB Medical, Inc. ("JDB Medical") and James Beeton ("Beeton") retained K.J. Kuchta of Forensics Consulting Solutions, LLC in Phoenix, Arizona to serve as their ESI consultant. Although Keith Flint ("Flint") and Flint Medical, Inc. ("Flint Medical") had not retained an

ESI consultant as of May 25, 2007, the Flint parties have subsequently worked with John Hartney, an IT specialist at Flint's counsel's office, to address ESI issues.

6. By prior agreement, counsel for the parties did not ask their clients to participate in the May 25, 2007 telephone conference but all counsel consulted with their clients either prior to and/or subsequent to the May 25, 2007 telephone conference. When necessary, the consultants spoke directly to the clients regarding ESI issues.

7. After the May 25, 2007 telephone conference, counsel consulted privately with their respective consultants and held a second telephone conference on June 1, 2007.

8. In addition to the formal telephone conferences outlined here, the parties have exchanged e-mails and participated in various telephone calls to address the relevant ESI issues.

9. As a result of their work, counsel for the parties have reached agreement on many ESI issues. Those agreements are outlined below.

10. There is one area where the parties are continuing to work together to determine whether they can reach agreement on an unresolved ESI issue or whether this Court's assistance will be required. That issue is outlined below.

## II. ESI SUBJECTS ON WHICH THE PARTIES HAVE REACHED AGREEMENT

### A. NATIVE FILES

11.     The parties have agreed that the relevant time period for this matter is approximately September 1, 2005 through July 31, 2006 ("relevant time period").

12.     All parties will preserve the native files relating to this case for the relevant time period.

13.     In conjunction with an October 2006 litigation hold, ELA created forensic or ghost images of the hard drives of Jim Pacek, Tom Carpenter, Clyde Dunavent, Kallol Basu, Mike Mishell, John Visone, Jim Gerrity and Jo Pfeifer.  With regard to any other ELA employees (present or former) or consultants (present or former) identified on any party's 26(a)(1) disclosures, ELA has instructed those individuals to preserve all ESI on their hard drives and will continue to preserve and maintain the backup tapes associated with these individuals' computers.

14.     ELA backup tapes have been preserved and will continue to be preserved in a secure area of ELA's IT department.

15.     A litigation hold was instituted for Sorin, S.p.A. in April 2007.  The litigation hold required that any hard copy or electronic documents (including emails) regarding or in any way related to Beeton, JDB or JDB's engagement as an independent sales representative be preserved.  To date, Sorin, S.p.A. has not identified any responsive electronically stored information.  Additionally, in response to a request by Plaintiffs, Sorin, S.p.A. and ELA have confirmed that Andre-Michel Ballester's e-mail is not

4

electronically stored on either of its servers, as Andre-Michel Ballester is not an employee of either company.  At Plaintiffs' request, Defendant Sorin, S.p.A. will send a non-binding request to Mr. Ballester requesting that he preserve and not destroy any ESI on his computer that may be relevant to this action.

16. A litigation hold was instituted for the Beeton parties in July 2006.  Since that time, the Beeton parties have preserved ESI on a single desktop computer utilized by the Beeton parties during the relevant time period.  ESI relevant to this matter has remained on the hard drive and has also been transferred to a CD.  The desktop is no longer being used but has been preserved.

17. The Beeton parties utilized three commercial e-mail services during the relevant time period.  E-mails have been preserved on the hard drive and on a CD and the Beeton parties have paid each e-mail service provider certain fees to ensure that all e-mail will be preserved, to the extent possible, on the servers of the e-mail providers.

18. On or before June 15, 2007, the Beeton parties will ensure that a forensic or ghost image of the hard drive is obtained.  This task will be performed under the supervision of the Beeton parties' ESI expert/consultant.

19. In addition, utilizing IMAP or a similar process, the Beeton parties will seek to further ensure the preservation of all e-mails still resident on the servers of commercial providers by downloading these to a local file.

20. The Flint parties utilized a single desktop computer during the relevant time period.  The relevant ESI remains resident on the hard drive of that computer.

21.     During the relevant period, the Flint parties utilized a single commercial e-mail service provider and are taking steps to ensure that e-mails are preserved, to the extent possible, on the server of the e-mail provider.  On or before June 15, 2007, the Flint parties will ensure that a forensic or ghost image of the hard drive is obtained.

22.     In addition, utilizing IMAP or a similar process, the Flint parties will seek to further ensure the preservation of all e-mails still resident on the servers of commercial providers by downloading these to a local file

### B. META-DATA

23.     By taking the steps outlined above to preserve ESI in its native format, the parties believe they are taking the necessary and appropriate steps to preserve meta-data.  For the moment, the parties have agreed that meta-data associated with the native files does not need to be produced with the following exceptions:

(a)     ELA will produce to the Beeton parties the native file (including all associated meta-data) for a June 2, 2006 letter addressed to Jim Beeton at JDB Medical, Inc.;

(b)     ELA will produce to the Beeton parties the native file (including all associated meta-data) for a July 1, 2006 letter addressed to James Beeton at JDB Medical, Inc.

(c)     Although the parties are not requesting the production of any additional meta-data at this time, no party is waiving its right to request additional meta-data as the case progresses.  However, it is the parties' belief that they have made a

good faith effort to assess instances where meta-data may be relevant and that any future requests for meta-data will not delay the case.

### C. BACK UP TAPES

24. ELA and Sorin will maintain and preserve all back up tapes from the relevant time period. Such backup tapes do exist.

25. Based on a conversation between ELA/Sorin's technology consultant and the Beeton parties' consultant, it is the belief of the parties that, at this juncture, restoring the backup tapes would not be the best source of additional ESI that may be relevant to this case. Based on discussions between the consultants, it is the conclusion of the Beeton parties' expert that the back up tapes would be a secondary source of additional data and that further exploration (as outlined below) of ESI still resident on ELA's desktop hard drives is a more appropriate focus.

26. Neither the Beeton nor the Flint parties are waiving their right to assert the need for review of the back up tapes at a later date but such efforts do not appear necessary at this time.

### D. PRODUCTION OF RELEVANT DOCUMENTS

27. The parties have agreed that all relevant documents may be produced as static images with the exceptions noted in this Addendum to the Scheduling Order.

### E. MISCELLANEOUS ESI ISSUES

28. In addition to their discussions regarding desk top computers, hard drives, and back up tapes, the parties discussed other devices upon which and from which ESI may be stored and/or retrieved.

29. ELA will confirm by June 15, 2006 that as part of its search for relevant ESI it has reviewed any laptops, home computers, hand held devices or flash drives of ELA employees (past or present) or ELA consultants (past or present) identified on any party's 26(a)(1) disclosures.

30. Flint utilized a palm pilot during the relevant time period. Flint's use of the palm pilot was limited to calendaring appointments and/or events. The parties have not yet reached agreement as to how the information maintained on the palm pilot should be produced and are engaged in ongoing discussions on this issue.

31. Beeton utilized a pager during the time period relevant to this case. The service provider for that pager was Skytel. Beeton's expert informed all counsel of his belief (based on prior work) that Skytel maintains the first 50 characters of messages sent through the Skytel service for a period of 36 months. Counsel for Beeton and ELA have discussed this matter and have agreed that as long as the Beeton parties do not intend to introduce such messages as a basis for arguing that Beeton made "best efforts" under the contract, that it is not necessary to retrieve this ESI. The Beeton parties do not intend to utilize pager messages as part of their proof of best efforts.

32. Carpenter utilized a pager during the time period relevant to this case, however, Carpenter did not use the Skytel service and ELA has no reason to believe that any of Carpenter's pages have been maintained by his service provider.

33. Beeton did not utilize an electronic calendar during the relevant time period and is producing his paper calendar.

## III. AREAS IN WHICH THE PARTIES MAY BE IN DISAGREEMENT

34. As part of their ESI discussions, counsel for the parties determined that the identification of relevant ESI was achieved by all parties (with a narrow exception discussed below) through "self-harvesting."

35. Essentially, counsel for all parties requested that their clients review the ESI resident on their computers, identify any information relevant to this matter and provide copies of the ESI to their counsel.

36. In the case of the Beeton and Flint parties, Beeton and Flint undertook the necessary review and, working in conjunction with their counsel, provided the documents to counsel.

37. In the case of ELA, outside counsel worked with in-house counsel to implement a process by which individuals with information relevant to this case would review their ESI and provide relevant ESI to an individual at ELA for transmission to ELA's outside counsel.

38. Plaintiffs and Defendants have differing views as to whether this process of self-harvesting is sufficient for ensuring that all relevant ESI has been retrieved.

39. Counsel for ELA and Sorin believe that self-harvesting is an appropriate method for retrieving ESI.

40. Counsel for ELA and Sorin have discussed various electronic methods for retrieving ESI with their consultant who believes, based on his experience and various

studies, that self-harvesting is often more thorough than the use of search protocols utilizing keywords.

41.  Counsel for the Beeton parties have discussed self-harvesting with their consultant who believes, based on his experience and various studies, that the thoroughness of self-harvesting varies markedly based on the instructions provided to the custodians of the ESI, the diligence of each individual custodian in initially storing and subsequently retrieving and reviewing ESI and the knowledge possessed by each custodian regarding operating systems and how ESI is stored on desktops.  Beeton's consultant believes that self-harvesting, standing alone, will not ensure a complete retrieval of all relevant ESI or a systemic verification/authentication process.

42.  One ELA custodian, Jim Pacek (the former President of ELA during the relevant time period), is no longer employed by ELA.  ELA utilized an outside vendor to conduct an electronic search of Pacek's desk top using keyword terms and other electronic search parameters.

43.  The Beeton parties have proposed that an electronic search protocol be agreed to by their consultant and ELA/Sorin's consultant and that the electronic search protocol be run on the computers of Pacek (the former president of ELA), Tom Carpenter (former Western Regional Manager for ELA), Clyde Dunavent (Manager of Business Development for ELA), Jim Beeton and Keith Flint.  Depending on the consultants' discussions, the protocol for Pacek may be appropriate and/or may serve as a starting point for Pacek, Carpenter, Dunavent, Beeton and Flint.

44. Based on conversations with their expert/consultant, the Beeton parties believe that such an electronic search would help verify that the self-harvesting conducted by Carpenter, Dunavent, Beeton and Flint was complete and that the protocol utilized for retrieving documents from Pacek's desktop was appropriate.

45. Counsel for ELA and Sorin are not prepared to agree that such electronic searches are appropriate or necessary.

46. In an attempt to resolve this potential disagreement, counsel for ELA/Sorin and the Beeton parties have agreed that their consultants should converse and attempt to agree upon an electronic search methodology which is acceptable to all parties. The experts will then ascertain the cost associated with conducting the electronic protocol on the desktop computers of Pacek, Carpenter, Dunavent, Beeton and Flint.

47. Once an electronic search protocol is agreed upon and priced, the parties will try to agree on a path forward. The parties have agreed that the electronic protocol and associated pricing should be completed on or before June 15, 2007.

48. Counsel for ELA/Sorin want to make clear that by agreeing to participate in the creation of a proposed electronic protocol and the pricing of that protocol, that they in no way agree to the Beeton parties' request that such a protocol be run or in any way waive their right to object and put forth arguments against the use of such a protocol.

49. The Beeton parties are initially proposing that an electronic search protocol be used only for a small percentage of ELA's document custodians (3 out of approximately 23 custodians) and believe that by proposing to utilize a two-stage

11

process that further information regarding the cost of and necessity of conducting such an electronic protocol can be determined prior to any request that an electronic search be conducted for all the relevant custodians.

It is the parties' understanding that this Court will review this Addendum and will notify the parties if the Court wishes to have counsel appear before the Court to discuss ESI issues.  On or before June 20, 2007, the parties will submit a status report to the Court regarding their progress and ability to resolve the remaining issues relating to electronic searches of ESI relating to Pacek, Carpenter, Dunavent, Beeton and Flint.

DATED at Denver, Colorado, this 6th day of June, 2007.

BY THE COURT:

*s/Craig B. Shaffer*
Craig B. Shaffer
United States Magistrate Judge

SCHEDULING ORDER ADDENDUM TO BE TENDERED FOR REVIEW:

| | |
|---|---|
| *s/ John D. Martin* | *s/ Daniel D. Williams* |
| John D. Martin<br>Amber F. Ju<br>Oster & Martin, LLC<br>370 17th Street, Ste. 4400<br>Denver, CO  80202<br><br>AND<br><br>Alan K. Steinbrecher<br>Law Offices of Alan K. Steinbrecher, P.C.<br>515 South Flower Street, 17th Floor<br>Los Angeles, CA  90071<br><br>*Attorneys for Plaintiffs JDB Medical, Inc. and James D. Beeton*<br><br>s/ *Gretchen M. Nelson, Esq.*<br>Gretchen M. Nelson, Esq.<br>Gabriel Barenfeld, Esq.<br>Kreindler and Kreindler<br>707 Wilshire Blvd., Ste 5070<br>Los Angeles, CA 90017<br><br>*Attorneys for Plaintiffs Flint Medical, Inc. And Keith Flint* | Neal S. Cohen<br>Daniel D. Williams<br>Laura A. Hutchings<br>Faegre & Benson, LLP<br>1900 15th Street<br>Boulder, CO  80302<br><br>Kerry L. Bundy<br>Faegre & Benson<br>2200 Wells Fargo Center<br>90 South Seventh Street<br>Minneapolis, MN 55402-3901<br><br>*Attorneys for Defendants ELA Medical, Inc and Sorin S.p.A.* |