IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 07-cv-00350-REB-CBS

JDB MEDICAL, INC., a California corporation, and
JAMES D. BEETON, an individual,

    Plaintiffs,

v.

THE SORIN GROUP, S.p.A. an Italian entity of unknown form, and
ELA MEDICAL, INC., a Delaware corporation,

    Defendants.

Civil Action No. 07-cv-00591-REB-CBS

FLINT MEDICAL, INC., a California corporation, and
KEITH FLINT, an individual,

    Plaintiffs,

v.

ELA MEDICAL, INC., a Delaware corporation,
THE SORIN GROUP, S.p.A. an Italian entity of unknown form, and
DOES 1 THROUGH 10, inclusive,

    Defendants.

## ORDER CONCERNING
## MOTION FOR PARTIAL SUMMARY JUDGMENT

**Blackburn, J.**

    This matter is before me on the **Defendants' Joint Motion for Partial Summary Judgment** [#149], filed February 29, 2008. The plaintiffs filed responses [#159 and #161], and the defendants filed a reply [#176]. I grant the motion in part, and I deny the

motion in part.[1]

## I. JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1332 (diversity).

. ## II. SUMMARY JUDGMENT STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. ***White v. York Int'l Corp.***, 45 F.3d 357, 360 (10th Cir. 1995). FED. R. CIV. P. 56 (c) provides that the court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); ***see Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 250 (1986); ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir.1994). Summary judgment may be granted if the court concludes that no "rational trier of fact" could find for the nonmoving party based on the showing made in the motion and response. ***Matsushita Electric Industrial Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986).

## III. FACTS

Defendant, ELA Medical, Inc., is a distributor and marketer of cardiac rhythm management devices, including pacemakers and internal defibrilators. ELA describes itself as an indirect subsidiary of the other defendant, The Sorin Group, S.P.A., which the plaintiffs have named as an Italian entity of unknown form. ELA engages independent sales representatives to sell its products in the United States. The

---

[1] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. ***Geear v. Boulder Cmty. Hosp.***, 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

products are manufactured by various subsidiaries of Sorin.

In the fall of 2005, plaintiff, James D. Beeton, negotiated an agreement with ELA under which Beeton agreed to become an independent sales representative for ELA. *Motion for summary judgment* [#149], Exhibit A-1 (JDB Agreement).[2] Beeton operates a corporation, JDB Medical, Inc., and JDB Medical, Inc., is the entity that contracted with ELA. I will refer to Beeton and JDB Medical, Inc. collectively as JDB. JDB's sales territory covered a specified area in southern California. The JDB Agreement includes various provisions concerning performance requirements, the term of the agreement, renewal of the agreement, and termination of the agreement. To the extent they are relevant to the motion for summary judgment, these provisions are discussed in detail below.

JDB was authorized under the agreement to engage sub-representatives to sell ELA products. On January 17, 2006, JDB entered into a sub-representative agreement with Flint Medical, Inc., and its principal, Keith Flint. Exhibit A-2 (Flint Agreement). I will refer to Flint Medical, Inc. and Keith Flint collectively as Flint. JDB also entered into a sub-representative agreement with an individual named Dale Holt.

On June 2, 2006, ELA President, James L. Pacek, sent a letter to JDB giving JDB notice of potential termination of the JDB Agreement under Section 6.03 of the agreement. *Motion for summary judgment* [#149], Exhibit A-4, attachment A. Pacek cited JDB's failure to meet sales quotas and failure to use its best efforts. The letter recited also JDB's earlier oral assurance that it would obtain sales of 360 thousand dollars during the months of June and July of 2006. *Id.*

---

[2] Hereafter, I will refer to the exhibits attached to the defendants' motion for summary judgment by their combined letter an number designation, e.g. Exhibit A-1.

On July 1, 2006, Pacek sent a letter to JDB in which Pacek said the JDB Agreement was terminated. *Motion for summary judgment* [#149], Exhibit A-4, attachment B. Pacek cited JDB's assurance that it would obtain sales of 360 thousand dollars in June and July of 2006, and the fact that JDB's actual sales in June, 2006, were approximately 50 thousand dollars. Pacek said he was terminating the agreement under Section 6.02(c) based on JDB's failure to use its best efforts, as required by Section10.01. In addition, Pacek cited JDB's failure to obtain training and certifications for its defibrilators, as required under Section 10.07 of the agreement. Both the June 2, 2006, and the July 1, 2006, letters were sent on letterheads that shows the name "SORIN GROUP" at the top, and which names several other entities, including ELA Medical, in smaller letters. *Motion for summary judgment* [#149], Exhibit A-4, attachments A and B.

JDB and Flint claim that ELA did not have a legitimate basis to terminate the JDB Agreement, and they argue that the termination was simply a means to acquire the benefit of JDB's efforts without having to pay JDB the amounts due under the agreement. According to JDB and Flint, ELA enticed JDB into building a sales infrastructure for ELA in southern California by entering into the JDB Agreement. JDB says it shared its business plan with ELA, recruited a sales team, and established hospital and physician relationships before the termination. JDB claims ELA then terminated the agreement and retained the benefits of JDB's efforts.

After the termination of the JDB Agreement, both JDB and Flint filed lawsuits against ELA and Sorin. JDB and Flint each allege ten claims for relief against ELA and Sorin. Those claims include violation of the Colorado and California wholesaler statutes, breach of contract, fraud, negligent misrepresentation, intentional interference with

4

contract, intentional interference with prospective business relations, and promissory estoppel. In their present motion for summary judgment, the defendants seek summary judgment on some, but not all of the plaintiffs' claims.

## IV. WHOLESALER STATUTES

Both JDB and Flint assert claims under the Colorado and California wholesaler statutes. §12-66-103, C.R.S.; Cal. Civ. Code § 1738.15. The elements of these claims are essentially identical under both the Colorado and California statutes. Those elements are 1) the defendants are distributors, jobbers, or manufacturers; 2) who knowingly (willfully under California law); 3) failed to pay commissions; 4) to a wholesale sales representative; 5) as provided in a written sales agreement (written contract under California law).

The defendants argue that the relief available under the wholesaler statutes is limited to the recovery of commissions that are earned but remain unpaid. If that is true, then JDB and Flint cannot assert claims under the wholesaler statutes for recovery of commissions that JDB and Flint claim they would have earned in the future, but which have not actually been earned, or for other damages that are not commissions. I agree with the defendants' contention. Both the California and Colorado statutes permit recovery only if there is a knowing or willful failure to pay commissions. §12-66-103, C.R.S.; Cal. Civ. Code § 1738.15. When commissions are tied to sales amounts, as they generally are, the amount of future potential commissions is unknown because future sales amounts are unknown. One cannot demonstrate a knowing or willful failure to pay an unknown amount. However, when commissions are earned under a specified formula and sales have been completed, or when future minimum commission amounts are guaranteed, then one may be able to demonstrate a knowing or willful failure to pay

5

such a known amount.  I conclude that the plain language of both §12-66-103, C.R.S. and Cal. Civ. Code § 1738.15, limits the relief available to commissions that have been earned but are unpaid, and precludes recovery for projected future commissions of an unspecified amount and other losses that are not commissions.

Here, Flint does not claim that it has earned specific commission amounts that have not been paid.  *Motion for summary judgment* [#149], p. 7 (I.A.3.2.); *Flint response*, p. 9 (III.A.2.).  Absent evidence of an earned commission that remains unpaid, the defendants are entitled to summary judgment on Flint's claim under the wholesaler statutes.

On the other hand, there is a genuine issue of material fact concerning one or more commission amounts claimed by JDB that remain unpaid.  Further, having reviewed the defendants' other arguments concerning the applicability of the wholesaler statutes to JDB's claim, I conclude that there are genuine issues of material fact related to the applicability of the wholesaler statutes to JDB as well as a determination of the relief to which JDB may be entitled under the statutes.  Therefore, the defendants' motion for summary judgment on JDB's claim under the wholesaler statutes is denied.

## V.  FLINT'S BREACH OF CONTRACT CLAIM

Flint, the sub-representative hired by JDB, does not have a contract with ELA. However, Flint seeks to enforce the terms of the agreement between ELA and JDB as a third-party beneficiary of that agreement.  The defendants argue that they are entitled to summary judgment on Flint's breach of contract claim because there is no evidence to support Flint's claim to third party beneficiary status.  I disagree.  Viewing the facts in the record in the light most favorable to Flint, as I must, I conclude that those facts provide an evidentiary basis on which a reasonable fact finder could conclude that Flint is a third

party beneficiary of the JDB Agreement. The defendants' motion for summary judgment on Flint's breach of contract claim is denied.

## VI. INTENTIONAL INTERFERENCE CLAIMS

Both JDB and Flint assert claims for intentional interference with contract and intentional interference with prospective business relations. To establish these claims, the plaintiffs must show: 1) the plaintiff had a contract with a non-party or a reasonable expectation of a prospective business relationship; 2) the defendant knew of the contract or the expected business relationship; 3) the defendant interfered with the performance of the contract or the formation of the expected business relationship; 4) the interference was improper; and 5) the interference caused damages. ***Krystkowiak v. W.O. Brisben Companies, Inc***., 90 P.3d 859, 871 (Colo.2004) (intentional interference with contract); ***Amoco Oil Co. v. Ervin***, 908 P.2d 493, 500 (Colo.1995) (intentional interference with prospective business advantage).

The defendants challenge the plaintiffs' intentional interference claims on four bases. First. the defendants argue that all but one of these claims are barred by the economic loss rule. Second, the defendants argue that the plaintiffs do not have evidence that shows that the plaintiffs had potential future customers. Third, the defendants argue that there is no evidence to support a claim that the defendants interfered with the contract between JDB and sub-representative Jim Holt because there is no evidence that Holt violated any of his obligations under his contract with JDB. Fourth and finally, the defendants argue that there is no evidence of interference by Sorin with any relevant contract.

### A. Summary of Intentional Interference Claims

JDB asserts three intentional interference claims:

7

**JDB's fifth cause of action** - JDB alleges that Sorin induced and influenced ELA to terminate its agreement with JDB via improper and unjustified means. *Second Amended Complaint* [#120], filed October 15, 2007, pp. 25 - 26.

**JDB's sixth cause of action** - JDB alleges that ELA and Sorin interfered with JDB's agreement with a sub-representative, Dale Holt. *Second Amended Complaint* [#120], filed October 15, 2007, pp. 26 - 27. JDB alleges that ELA and Sorin induced Holt to terminate his sub-representative agreement with JDB by inducing Holt to abandon his agreement with JDB and become instead a direct representative of JDB and Sorin.

**JDB's seventh cause of action** - JDB alleges that ELA and Sorin interfered with JDB's existing and prospective business relationships with hospitals, health care providers, and sub-representatives. The interference allegedly came in three forms: a) ELA and Sorin allegedly told JDB's contacts that the contacts no longer should deal with JDB concerning Sorin products; b) ELA and Sorin allegedly made false and disparaging remarks about JDB's capabilities and competence; and c) ELA and Sorin allegedly told JDB's sub-representatives that ELA and Sorin wanted the sub-representatives to replace JDB as ELA and Sorin's primary representatives. *Second Amended Complaint* [#120], filed October 15, 2007, pp. 27 - 29.

Flint asserts four intentional interference claims:

**Flint's fifth cause of action** - Flint alleges that ELA and Sorin fraudulently induced Flint to breach a contract he had with Biotronik, in an effort to get Flint to work with JDB. *Flint's second amended complaint* [#117], filed October 12, 2007, p. 29.

**Flint's sixth cause of action** - Flint alleges that ELA and Sorin interfered with Flint's existing and prospective business relationships with hospitals and health care providers by luring Flint away from Biotronik "with the false promise of a long-term relationship and then, shortly thereafter, terminating the [defendants'] relationship with the JDB medical team, in an effort to hire (Flint) and other sub-representatives directly and on far less favorable and unacceptable terms, once Flint's career was sufficiently hitched to Sorin's products." *Flint's second amended complaint* [#117], filed October 12, 2007, pp. 30 - 31.

**Flint's ninth cause of action** - Flint alleges that Sorin induced and influenced ELA to terminate its agreement with JDB via improper and unjustified means. As a third party beneficiary of the agreement between ELA and JDB, Flint claims he was harmed by the termination of the agreement. *Flint's second amended complaint* [#117], filed October 12,

8

2007, p. 33.

**Flint's tenth cause of action** - Flint alleges that ELA and Sorin improperly interfered with Flint's sub-representative agreement with JDB when ELA and Sorin caused the agreement between JDB and ELA to be terminated. Termination of the agreement between JDB and ELA caused Flint's sub-representative agreement with JDB to be terminated. *Flint's second amended complaint* [#117], filed October 12, 2007, p. 34.

## B. Sorin's Participation

Sorin argues that there is no evidence in the record to show that The Sorin Group, S.p.A., took any action that can be seen as interference with any relevant contract or business relationship of JDB or Flint. I disagree. Viewing the facts in the record in the light most favorable to JDB and Flint, as I must, I conclude that there is at least a thin factual basis on which a reasonable fact finder might conclude that The Sorin Group, S.p.A., took actions that could be seen as interfering with the relevant contracts or business relationships.

## C. Economic Loss Rule

As adopted by the courts of Colorado, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." ***Grynberg v. Agri Tech, Inc.***, 10 P.3d 1267, 1269 (Colo. 2000); ***see also Town of Alma v. Azco Construction, Inc.***, 10 P.3d 1256, (Colo. 2000) ("'As a general rule, no cause of action lies in tort when purely economic damage is caused by negligent breach of a contractual duty.'") (quoting ***Jardel Enterprises, Inc. v. Triconsultants***, 770 P.2d 1301, 1303 (Colo.App. 1988)). The rule, thus, seeks to preserve the distinction between tort and contract law:

> Limiting the availability of tort remedies in these situations holds parties to the terms of their bargain. In this way, the law serves to encourage parties to confidently allocate risks and costs during their bargaining without fear that

> unanticipated liability may arise in the future, effectively
> negating the parties' efforts to build these cost considerations
> into the contract. The economic loss rule thus serves to
> ensure predictability in commercial transactions.

*Town of Alma*, 10 P.3d at 1262. Whether the rule applies depends on the source of the duty the defendant is alleged to have breached. "A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. A breach of a duty *arising independently* of any contract duties between the parties, however, may support a tort action." *Id*., 10 P.3d at 1262 (citation and internal quotation marks omitted; emphasis in *Town of Alma*).

### D. JDB's Claims and the Economic Loss Rule

#### i. Claims Against Sorin

Sorin argues that JDB's intentional interference claims against it are barred by the economic loss rule, even though Sorin does not have a contract with JDB. In essence, Sorin argues that its duties toward JDB were controlled by the JDB Agreement, and thus the economic loss rule bars JDB's intentional interference claims against Sorin. Sorin cites *Parr v. Triple L & J Corp*., 107 P.3d 1104 (Colo App. 2004) in support of its contention. In *Parr*, the plaintiff had a contract with Triple L & J Corporation. The plaintiff asserted a claim of intentional interference with prospective business advantage against an individual defendant whose challenged actions were taken while he was acting as president of Triple L & J corporation. *Id*., at 1108. The *Parr* court concluded the claim against the individual defendant was barred by the economic loss rule because the individual's actions, as president of the corporation, were subject to the duty of care defined in the contract between the plaintiff and the corporation. *Id*. I read this opinion to mean that the actions of the individual were, in

essence, actions of the corporation because the individual's actions were taken while the individual was acting as the president of the corporation.

In the present case, the relationship between defendant The Sorin Group, S.p.A., and defendant ELA is a matter of dispute. However, the evidence in the record does not demonstrate without question that Sorin was acting as an operative or agent of ELA when Sorin took the actions alleged in the complaint. If Sorin was not acting as an agent or operative of ELA, like the individual defendant in *Parr*, then Sorin's alleged actions may not be subject to the standards defined in the contract between JDB and ELA. If the alleged actions of The Sorin Group, S.p.A. were not subject to the standards defined in the JDB Agreement, then the economic loss rule is not applicable to the intentional interference claims against Sorin.

Viewing the facts in the record in the light most favorable to JDB, it is not clear whether and how defendant Sorin was subject to the standards defined in the contract between JDB and ELA. Because there remain genuine issues of fact concerning the applicability of the economic loss rule to JDB's intentional interference claims against Sorin, Sorin's motion for summary judgment on these claims, JDB's fifth, sixth, and seventh causes of action, is denied.

### ii. Claims Against ELA

JDB's sixth cause of action against ELA is barred by the economic loss rule. Again, JDB alleges in this claim that ELA induced a JDB sub-representative, Dale Holt, to abandon his sub-representative agreement with JDB, and to work directly for ELA instead. JDB's and ELA's obligations with regard to sub-representatives are addressed in some detail in the JDB Agreement. Holt's sub-representative agreement with JDB is an agreement that is tied to and specifically contemplated in the JDB Agreement. The

11

standards applicable to ELA's actions concerning sub-representatives are controlled by the JDB Agreement, and JDB may not assert a tort claim based on ELA's treatment of sub-representatives. "A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie." *Town of Alma*, 10 P.3d at 1262. The fact that ELA allegedly interfered with a separate contract between JDB and Holt does not alter this analysis. The economic loss rule is applicable when a plaintiff seeks to remedy an economic loss that arises from interrelated contracts. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004). The Holt sub-representative agreement is a contract that is closely interrelated with the JDB Agreement. ELA's motion for summary judgment on JDB's sixth cause of action is granted.

For similar reasons, I conclude that JDB's seventh cause of action against ELA also is barred by the economic loss rule. Whether ELA properly told JDB's contacts not to deal with JDB concerning Sorin products is an issue tied directly to the JDB Agreement. As with the sixth cause of action, the standards applicable to ELA's actions toward JDB's sub-representatives are controlled by the JDB Agreement. Under the economic loss rule, JDB may not assert a tort claim that applies a different standard based on ELA's treatment of sub-representatives. JDB's seventh cause of action against ELA is barred by the economic loss rule, and ELA is entitled to summary judgment on JDB's seventh cause of action.

### E.  Flint's Claims and the Economic Loss Rule

The defendants concede that Flint's fifth cause of action is not barred by the economic loss rule because this claim is not premised on the alleged wrongful termination of the JDB Agreement. Flint's fifth cause of action is discussed further

below.

### i. Claims Against Sorin

Each of Flint's intentional interference claims name Sorin as a defendant. For the reasons outlined above concerning JDB's intentional interference claims against Sorin, I conclude that there remain genuine issues of fact concerning the applicability of the economic loss rule to Flint's intentional interference claims against Sorin. Sorin's motion for summary judgment on Flint's fifth, sixth, ninth, and tenth causes of action is denied.

### ii. Claims Against ELA

With regard to Flint's intentional interference claims against ELA, I conclude that Flint's sixth, ninth, and tenth causes of action are barred by the economic loss rule. Flint claims to be a third party beneficiary of the JDB Agreement, and he seeks to enforce that agreement against ELA. Flint's sub-representative agreement with JDB is closely interrelated with and explicitly contemplated in the JDB Agreement. Flint's sixth, ninth, and tenth causes of action each are founded on his claim that ELA wrongfully terminated the JDB Agreement. The standards applicable to the termination of the JDB Agreement are defined explicitly in the JDB Agreement. Under the economic loss rule, Flint cannot seek to apply a different standard to this claim by asserting intentional interference claims. "A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie." ***Town of Alma***, 10 P.3d at 1262. On this basis, ELA 's motion for summary judgment is granted as to Flint's sixth, ninth, and tenth causes of action.

### F. Flint's Fifth Cause of Action

Again, the defendant's concede that Flint's fifth cause of action is not barred by the economic loss rule. This claim concerns alleged interference with Flint's contract

13

with Biotronic. However, the defendants argue that Flint has conceded that the "principal reason" Flint left Biotronic was that Biotronic's products were not sellable in the way Flint wanted them to be sellable. *Exhibit A-9* (Flint deposition), pp. 44 - 45. The defendants contend that this testimony demonstrates that Flint has no evidence that the defendants induced Flint to breach his contract with Biotronic. Flint's only response to this contention is Flint's statement that Flint testified that Biotronik's products were difficult to sell, but not impossible. *Flint response* [#161], p. 13.

This testimony alone does not demonstrate the absence of a genuine issue of material fact concerning Flint's fifth cause of action. Flint has alleged that the defendants induced him to leave Biotronic by making false representations. The defendants have not challenged Flint's evidentiary basis for this contention. The fact that Flint had a good reason to leave Biotronic, a reason independent of the defendants' alleged false representations, does not necessarily mean that the defendants' alleged improper actions did not interfere with Flint's contract with Biotronic and cause Flint harm. It is conceivable that the defendants' actions caused Flint to leave Biotronic at a time and on terms that were different than the time and terms on which he otherwise would have left Biotronic. The record contains no evidence on this issue, but the defendants have not addressed this issue or similar issues in their motion. Viewing the facts in the record in the light most favorable to Flint, the defendants' motion for summary judgment on Flint's fifth cause of action must be denied.

G. Evidence of Potential Future Customers

In Section VIII of this order, I address the defendants' motion for summary judgment on the plaintiffs' claims for damages to compensate them for future lost profits. In essence, I conclude that the plaintiffs have presented sufficient evidence of future lost

14

profits during the initial five year term of the JDB agreement, and that the defendants are not entitled to summary judgment on this aspect of the plaintiffs' damages claims. Beyond the initial five year term of the agreement, however, I conclude that the plaintiffs' future lost profits damages are too speculative, and that the defendants are entitled to summary judgment on this aspect of the plaintiffs' damages claims. These conclusions apply equally to the plaintiffs' intentional interference claims.

### VII.  PROMISSORY ESTOPPEL, UNJUST ENRICHMENT, & QUANTUM MERUIT

It is undisputed that the JDB Agreement and the Flint Agreement are valid and enforceable. The defendants argue that the plaintiffs may not assert claims for promissory estoppel, unjust enrichment, and quantum meruit when the relationships of the parties are governed by fully integrated contracts. I agree.

JDB's promissory estoppel claim is based on an allegation that the defendants represented during negotiations preceding the agreement that any agreement would "entail a long-term relationship." *Second Amended Complaint* [#120], ¶ 105. Flint's promissory estoppel claim is based on an essentially identical allegation. *Flint's second amended complaint* [#117], ¶ 107. The JDB Agreement itself contains specific terms as to the term of the agreement, but contains no promise of a long-term relationship. "If a written contract is completely integrated, it is unreasonable as a matter of law to rely on parol representations or promises within the scope of the contract made prior to its execution." **Watkins & Son Pet Supplies v. Iams Co.**, 254 F.3d 607, 612 (6th Cir. 2001). In this context, JDB and Flint cannot assert a promissory estoppel claim based on an oral promise allegedly made prior to the execution of an integrated contract when it is undisputed that the contract is valid and enforceable. The defendants are entitled to summary judgment on the promissory estoppel claims.

15

Similarly, the plaintiffs cannot assert valid claims of unjust enrichment or quantum meruit in this context. "Unjust enrichment is a theory of recovery that involves an implied contract at law when the parties either have no express contract or have abrogated it. In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." **Bedard v. Martin**, 100 P.3d 584, 591 -592 (Colo. App. 2004) (citations omitted). Here, the express JDB Agreement covers the subject matter that is the subject of the plaintiffs' unjust enrichment and quantum meruit claims. The defendants are entitled to summary judgment on those claims.

## VIII. FUTURE LOST PROFITS DAMAGES

The defendants argue that they are entitled to summary judgment on the plaintiffs' claims for future lost profits damages. The defendants contend that the plaintiffs have not presented evidence sufficient to support a fair approximation of the amount of the plaintiffs' future lost profits caused by the defendants' alleged breach of the JDB Agreement. To prove future lost profits in a breach of contract case, a plaintiff must provide the trier of fact with 1) evidence that damages will accrue in the future; and 2) sufficient evidence to permit the trier of fact to compute a fair approximation of the loss. **Pomeranz v. McDonald's Corp.**, 843 P.2d 1378, 1382 (Colo.1993). Viewing the evidence in the record in the light most favorable to the plaintiffs, I conclude that the evidence is at least minimally sufficient to satisfy the standard stated in **Pomeranz** with regard to the plaintiffs' claimed future lost profits in the initial five year term of the JDB Agreement.

On the other hand, I conclude that the defendants are entitled to summary

16

judgment on the plaintiffs' claims for future lost profit damages to the extent the plaintiffs' claims extend beyond the initial five year term of the JDB Agreement. The JDB Agreement provides that either party can terminate the agreement at the end of the initial five year term at the sole discretion of the terminating party. *JDB Agreement*, Section 6.01. The plaintiffs' claims for lost profit damages based on estimates of profits the plaintiffs' would have earned beyond the initial five year term of the JDB Agreement necessarily are based on the assumption that the agreement would have been renewed at the end of its initial five year term. In the context of this case, such an assumption is unduly speculative. "(T)he mere hope" for renewal of a contract "renewable at the discretion of another party will not support recovery of any future" lost profits when the other party can deny renewal at its discretion. **United Way of San Antonio, Inc. v. Helping Hands**, 949 S.W.2d 707, 712 (Tex. Civ. App. 1997).

Given the terms on which the JDB Agreement was subject to renewal, the evidence in the record is not sufficient to permit the trier of fact to compute a fair approximation of the plaintiffs' lost profits beyond the initial five year term of the JDB Agreement. **Pomeranz v. McDonald's Corp.**, 843 P.2d 1378, 1382 (Colo.1993). Even when viewing the facts in the record in the light most favorable to the plaintiffs, no reasonable trier of fact could make a fair approximation of the plaintiffs' lost profits beyond the initial five year term of the JDB Agreemenet. The defendants, therefore, are entitled to summary judgment on the plaintiffs' claims for lost profits damages beyond the initial five year term of the JDB Agreement.

## IX. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Defendants' Joint Motion for Partial Summary Judgment** [#149],

filed February 29, 2008, is **GRANTED** as to Flint's first cause of action under the Colorado and California wholesaler statutes;

    2. That the **Defendants' Joint Motion for Partial Summary Judgment** [#149], filed February 29, 2008, is **GRANTED** as to JDB's sixth and seventh causes of action against ELA, in which JDB asserts claims of intentional interference with contract and intentional interference with actual and prospective business advantage;

    3. That the **Defendants' Joint Motion for Partial Summary Judgment** [#149], filed February 29, 2008, is **GRANTED** as to Flint's sixth, ninth, and tenth causes of action against ELA, in which Flint asserts claims of intentional interference with contract and intentional interference with actual and prospective business advantage;

    4. That the **Defendants' Joint Motion for Partial Summary Judgment** [#149], filed February 29, 2008, is **GRANTED** as to the plaintiffs' claims of promissory estoppel, unjust enrichment, and quantum meruit, JDB's ninth and tenth causes of action, and Flint's seventh and eighth causes of action;

    5. That the **Defendants' Joint Motion for Partial Summary Judgment** [#149], filed February 29, 2008, is **GRANTED** as to the plaintiff's claims for lost profits for any period of time extending beyond the initial five year term provided in the JDB Agreement;

    6. That the **Defendants' Joint Motion for Partial Summary Judgment** [#149], filed February 29, 2008, is **DENIED** otherwise.

    Dated June 11, 2008, at Denver, Colorado.

                                             **BY THE COURT:**

                                             **s/ Robert E. Blackburn**
                                             **Robert E. Blackburn**
                                             **United States District Judge**